# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### April 13, 2004 Session

## STATE OF TENNESSEE v. DAVID SCOTT AKERS

**Direct Appeal from the Circuit Court for Dyer County**
**No. C02-270     Lee Moore, Judge**

---

**No. W2003-00010-CCA-R3-CD - Filed July 26, 2004**

---

The Appellant, David Scott Akers, was indicted for the crimes of robbery and attempted robbery and, following a jury trial, was convicted of theft under $500 and attempted robbery. The trial court consolidated the sentencing hearing for these convictions with Akers' two pending probation revocation hearings. Following this hearing, Akers received an effective ten-year sentence for his two jury convictions and two one-year sentences from the revocation of his sentences for violation of the Motor Vehicle Habitual Offender (MVHO) Act. On appeal, Akers raises three issues for our review: (1) whether the trial court erred in admitting Akers' three prior MVHO convictions for impeachment purposes; (2) whether he was denied the effective assistance of counsel at trial and at sentencing; and (3) whether the trial court erred in conducting the revocation hearing without proper notice. Finding no error, the judgments of the Dyer County Circuit Court are affirmed.

**Tenn. R. App. P. 3; Judgments of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. and NORMA MCGEE OGLE, JJ., joined.

John W. Palmer and Jason L. Hudson, Dyersburg, Tennessee, (on appeal); and H. Tod Taylor, Assistant Public Defender, Dyersburg, Tennessee, (at trial), Attorneys for the Appellant, David Scott Akers.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Jennifer L. Bledsoe, Assistant Attorney General; C. Phillip Bivens, District Attorney General; and Charles Dyer, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

## Factual Background

On the night of July 9, 2002, Amy Robinson and Nicole Free were riding around in a rural area of Dyer County, when they observed a parked truck on a side road that intersected the road they were traveling. As they slowed, they heard "someone yelling for [them] to pull over." Robinson, who was driving, stopped and asked if anything was wrong. Although Free lived in the area, neither she nor Robinson recognized the person, later identified as the Appellant, or Sheila Hutchinson, who was also present. After determining that nothing was wrong, Robinson and Free got out of their car, and the four continued to engage in conversation. The Appellant and Hutchinson offered to sell Free and Robinson several purses and other items located in the Appellant's truck. After declining the offer, Robinson returned to her car. The Appellant followed her, leaned through the window of the passenger- side of the car, and demanded Robinson's and Free's purses. He then grabbed Free's purse; however, Free was able to retrieve it from the Appellant. At this point, Free, who was still outside the car, was attacked by Hutchinson, who also attempted to take the purse. The Appellant then reached back into the car, grabbed Robinson's hair, and again attempted to take her purse. Robinson placed her car in reverse and "slammed" the Appellant between the open passenger-side doors of her car and his truck. She then put her car in drive and made a quick turn, which threw the Appellant out of the car. Robinson proceeded to drive to Free's house, where she called the sheriff's department. Meanwhile, Free, in an effort to escape, returned to the main rural road with the intent of fleeing to her house. Free then relates,

> I'm trying to get away . . . then the truck starts up and here they come down the road. [H]e pulls up and he stops, and that's when he jumps out, attacks me and wrestles me to the ground . . . and he literally reaches around me and rips the handles on my purse out of my hand and throws it in the truck and shuts the door and takes off.

After the Appellant had taken her purse, Free, frantic at this point, ran through a field to the nearby home of Archie Criswell for help. Criswell called Free's family and the sheriff's department.

After Hutchinson's arrest, she told investigators where Free's purse could be found. The burned remains of the purse were recovered, along with some identification cards belonging to Free, near a park. The Appellant was later arrested at a motel.

On August 12, 2002, a Dyer County grand jury returned a two-count indictment against the Appellant and Hutchinson,[1] charging them with the robbery of Nicole Free and the attempted robbery of Amy Robinson. After a jury trial, the Appellant was convicted of theft under $500 and attempted robbery. A sentencing hearing was held on November 19, 2002, and the trial court sentenced the

---

[1]Hutchinson's case was severed, and no disposition of her case is shown.

Appellant to concurrent sentences of ten years, as a Range III persistent offender, for the attempted robbery and eleven months and twenty-nine days for the theft.

As part of the same sentencing hearing, the trial court also found that the Appellant had violated the terms of his probation in Case Nos. C01-03 and C01-139. These charges arose from guilty pleas to violations of the MVHO Act, which had been entered on June 12, 2001. As part of the plea agreement, the Appellant had received an effective two-year Department of Correction sentence, which was suspended with probation. After determining that the Appellant had violated his probation, the trial court revoked the Appellant's probationary sentences and ordered that the balance of the sentences be served consecutively with the current sentences imposed.

**Analysis**

On appeal, the Appellant raises three issues for our review: (1) whether the trial court erred in admitting for impeachment purposes the Appellant's three prior convictions for violation of the MVHO Act; (2) whether he was denied the effective assistance of counsel at trial and sentencing; and (3) whether he received proper notice that the probation revocation hearing would be conducted at the sentencing hearing for the attempted robbery and theft convictions.

## I. Admission of Prior Convictions

During the trial proceedings, a *Morgan* hearing was conducted to determine the admissibility of the Appellant's prior convictions for impeachment purposes. The trial court ruled that a prior reckless endangerment conviction was not admissible but held that the State could examine the Appellant regarding a prior theft conviction and three prior violations of the MVHO Act. The Appellant asserts that allowing the three prior habitual offender offenses to be used for impeachment purposes was error because the offenses did not involve dishonesty or false statement and their prejudicial effect outweighed their probative value. A trial court's determination under the Tennessee Rules of Evidence will not be reversed unless it appears from the record that the trial court abused its discretion. *State v. Mixon*, 983 S.W.2d 661, 675 (Tenn. 1999).

In the present case, the State provided the Appellant with notice of its intent to use the challenged convictions prior to trial. Clearly, the three violations were not crimes involving dishonesty or false statement. However, all three violations of the MVHO Act were punishable by imprisonment in excess of one year and were within the ten-year time limit. Tenn. R. Evid. 609(a)(2), (b). Thus, the only question for our review is whether the trial court properly balanced the probative value of the convictions against their prejudicial effect.

Two criteria are especially relevant in determining whether the probative value of a conviction on the issue of credibility outweighs its unfair prejudicial effect upon the substantive issues: (1) the impeaching conviction's relevance as to credibility; and (2) the impeaching conviction's similarity to the charged offense. *State v. Waller*, 118 S.W.3d 368, 371 (Tenn. 2003) (citing *Mixon*, 983 S.W.2d at 674). A trial court should first analyze whether the impeaching

conviction is relevant to the issue of credibility. *Id*. Rule 609 suggests that the commission of any felony is "generally probative" of a criminal defendant's credibility. *Id*. (citing *State v. Walker*, 29 S.W.3d 885, 890 (Tenn. Crim. App. 1999)). However, our supreme court has previously rejected a *per se* rule that permits impeachment by any and all felony convictions. *Id*. A prior felony conviction still must be analyzed to determine whether it is sufficiently probative of credibility to outweigh any unfair prejudicial effect it may have on the substantive issue of the case. *Id*.

As argued by the State, this court has previously held that a defendant's continued violation of the motor vehicle laws, after being declared a habitual motor vehicle offender, is probative of his credibility "because it may indicate a willingness to likewise disregard the laws of perjury." *State v. Roger Dale Hill*, No. 01C01-9508-CC-00267 (Tenn. Crim. App. at Nashville, June 20, 1996). Thus, the three prior convictions were probative of the Appellant's credibility. Further, we can find little, if any, prejudicial effect on the substantive issue of the case. The three complained of convictions were clearly not substantially similar to the charged offense. We can see no material risk that the jury would consider them as evidence of the Appellant's propensity to commit the present offenses. Thus, having found that the convictions were relevant to the Appellant's credibility, not unduly prejudicial, and not similar to the charged offense, we find no abuse of discretion in the trial court's decision to admit them for impeachment purposes. This issue is without merit.

## II. Ineffective Assistance of Counsel

Second, the Appellant asserts that he was denied his constitutional right to the effective assistance of counsel. Specifically, he contends that appointed trial counsel was deficient by: (1) failing to subpoena a potential witness and instead using that witness' statement, which was harmful to the Appellant; (2) failing to object to hearsay testimony, which was prejudicial to the Appellant; and (3) disclosing plea agreement negotiations to the trial court during the sentencing hearing.

We are first constrained to note that the Appellant has chosen to raise his ineffective claim in the context of a direct appeal. This practice is "fraught with peril" since it "is virtually impossible to demonstrate prejudice as required" without an evidentiary hearing. *Kirby George Wallace v. State*, No. C01-9308-CC-00275 (Tenn. Crim. App. at Nashville, Sept. 15, 1994). Instead, "ineffective assistance of counsel claims should normally be raised by a petition for post-conviction relief." *State v. Derenzy Turner and Vernon West*, No. 02C01-9512-CR-00390 (Tenn. Crim. App. at Jackson, June 11, 1997); *see also State v. Bobby Vincent Blackmon*, 78 S.W.3d 322, 328 (Tenn. Crim. App. 2001). The insertion of an ineffective assistance claim within a motion for new trial essentially transforms the hearing on the motion into a post-conviction proceeding. *State v. Kathy Jane Giles*, No. W2001-01468-CCA-R3-CD (Tenn. Crim. App. at Jackson, Apr. 2, 2002).

Nonetheless, to succeed on a challenge of ineffective assistance of counsel, the Appellant bears the burden of establishing the allegations set forth in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003). The Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687,

104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1) deficient performance and (2) prejudice resulting from the deficiency. The petitioner is not entitled to the benefit of hindsight, may not second-guess a reasonably based trial strategy, and cannot criticize a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). This deference to the tactical decisions of trial counsel is dependant upon a showing that the decisions were made after adequate preparation. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

It is unnecessary for a court to address deficiency and prejudice in any particular order or even to address both, if the petitioner makes an insufficient showing on either. *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Burns*, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *Burns*, 6 S.W.3d at 461. "[A] trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). However, conclusions of law are reviewed under a purely *de novo* standard with no presumption that the post-conviction court's findings are correct. *Id.*

### a. Failure to Subpoena Witness/Introduction of Statement

The Appellant complains that trial counsel was ineffective for his failure to "subpoena co-defendant Sheila Hutchinson, so that he could examine her with regard to an attempted drug transaction with the alleged victims, Nicole Free and Amy Robinson." Sheila Hutchinson was not called as a witness at the hearing on the motion for new trial. When an appellant contends that his trial counsel failed to present a witness in support of his defense, he should present that witness at the evidentiary hearing. *Black v. State*, 794 S.W.2d 752, 757-58 (Tenn. Crim. App. 1990). Due to this omission, we have no way of knowing whether Hutchinson would have invoked her Fifth Amendment rights and refused to testify, or if she had testified, what her testimony would have been. Thus, we are unable to conclude that trial counsel's performance was deficient.

Conversely, the Appellant argues that trial counsel was deficient for allowing Hutchinson's statement to be read into evidence by a sheriff's investigator because it contained remarks implicating the Appellant in the current crimes. The record reflects that trial counsel was successful in persuading the trial court to permit introduction of Hutchinson's pre-trial statement given to a

sheriff's investigator.[2] In Hutchinson's statement, which was read to the jury by the investigator, Hutchinson stated that at the time of the robbery and attempted robbery of the two victims, she and the victims were trying to work a "drug deal" for six to eight hydrocodone pills. After the drug deal went awry, Hutchinson acknowledged that the Appellant assaulted Free and stole her purse, which contained $30.00. Thus, by introducing Hutchinson's statement before the jury, trial counsel was successful in doing what the Appellant argued that trial counsel failed to do by not subpoenaing Hutchinson to testify at trial, *i.e.*, introducing evidence that the four were engaged in drug dealings.

Moreover, although the statement admitted the Appellant's involvement in the robbery of Free, clearly the allegation of drug dealing played a role in the jury's verdict by reducing the Appellant's crime from a class C felony to a misdemeanor. While we do not necessarily endorse such trial tactics, the proof of robbery was overwhelming and little was to be lost by this tactical gamble at this stage of the trial. Indeed in this case, the Appellant's sentencing exposure was reduced from a ten to fifteen-year-sentence to a maximum eleven-month, twenty-nine day sentence. Because we find no prejudice, we find this claim without merit.

### b. Failure to Object to Hearsay Statement

Second, the Appellant asserts that trial counsel was deficient for failing "to object to the introduction of hearsay testimony by Archie Criswell." Criswell testified at trial:

> Well, my doorbell rang . . . And when I opened the door, [Nicole Free] was standing outside the door, screaming and hollering and begging me to let her in the house . . . She said something to the effect, "They're trying to kill me," or something like that.

The Appellant challenges the testimony "they're trying to kill me" on grounds of hearsay. The trial court found the statement was "probably admissible" as an excited utterance under Tennessee Rule of Evidence 803(2), thus, deficient performance was not established. The record does not preponderate against this finding. Accordingly, this issue is without merit.

### c. Disclosure of Plea Offer During the Sentencing Hearing

During the course of the Appellant's sentencing hearing, trial counsel disclosed to the trial court that the State had made a plea offer, the terms of which were a sentence of eight years to run concurrently with his two-year probation revocation, and that the Appellant had rejected the offer. On the record, it was stated that this was done for post-conviction purposes. After hearing the evidence and arguments, the trial court subsequently sentenced the Appellant to terms of ten years for the attempted robbery and eleven months and twenty-nine days for the theft conviction. Additionally, he ordered that the terms be served consecutively to the Appellant's probation revocation sentences.

---

[2]Although the statement was clearly hearsay, no objection was entered by the State as to its admission. Moreover, the trial court concluded, "I'm going to let you do it this time, although I think I'm in error in doing so."

The Appellant argues that it was error to allow trial counsel to disclose to the court the terms and rejection of the plea offer pursuant to Tennessee Rule of Criminal Procedure 11(e)(6) and Tennessee Rule of Evidence 410, which prohibit the disclosure of plea negotiations. He asserts that the disclosure could have prejudiced the trial court's sentencing decision.

The Appellant's reliance upon Tennessee Rule of Criminal Procedure 11(e)(6) and Tennessee Rule of Evidence 410, which are similar in effect, is misplaced. These rules are designed to preclude the admission of a guilty plea for purposes of establishing the defendant's culpability or liability in an existing or subsequent civil or criminal proceedings. Obviously, the Appellant's guilt was not at issue during the sentencing hearing

Although the harm addressed by Rule 11(e) or Rule 410 is not implicated in this case, clearly the better practice would be to refrain from discussing sentencing negotiations during an "open plea" sentencing hearing to preserve sentencing neutrality. This issue is without merit.

## III. Notice for Probation Revocation

Lastly, the Appellant argues that he did not receive proper written notice regarding his probation revocation hearing and that, as a result, his due process rights were violated. The record establishes that the revocation hearing was conducted at the same time as the sentencing hearing for the attempted robbery and theft convictions. The trial court's order reflects that the Appellant's two probationary sentences in case numbers C01-03 and C01-139 were revoked due to the Appellant's arrests and convictions for attempted robbery and theft.

A revocation hearing is described as a flexible, informal proceeding. *Black v. Romano*, 471 U.S. 606, 613, 105 S. Ct. 2254, 2258 (1985); *State v. Wade*, 863 S.W.2d 406, 408 (Tenn. 1993). While the accused is not entitled to "the full panoply of procedural safeguards associated with a criminal trial," *Black v. Romano*, 471 U.S. at 613, 105 S. Ct. at 2258, the Due Process Clause contained in the Fourteenth Amendment to the United States Constitution and the Law of the Land provision contained in Article I, Section 8 of the Tennessee Constitution require that the accused be afforded certain basic rights. A minimum requirement mandated by the Due Process Clause includes, "written notice of the claimed violations of [probation or] parole." *Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 1761-62 (1973) (citing *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S. Ct. 2593, 2604 (1972); *see also Wade*, 863 S.W.2d at 408. This court has held, however, that the requirement is met when there is proof that the defendant had actual notice of the charges against him, *State v. Christopher Lynch*, No. E2001-00197-CCA-R3-CD (Tenn. Crim. App. at Knoxville, Apr. 16, 2002) (citations omitted) ("[t]hough written notice is preferred, . . . actual notice will suffice to meet the due process requirements in a revocation of probation proceeding"), and when the trial court makes oral findings of fact at the probation revocation hearing sufficient to show the grounds for the revocation and the reasons for the court's findings. *See State v. Leiderman*, 86 S.W.3d 584, 591 (Tenn. Crim. App. 2002).

In the case before us, it appears that the Appellant did in fact have actual notice that the revocation hearing would be conducted in conjunction with his other sentencing hearing. Trial counsel stated, on the record, that the State had offered the plea agreement "of eight years, Range III, concurrent with his *two-year probation revocation that was also set to be heard at the same time*." (Emphasis added).[3] Clearly, trial counsel was aware that the revocation hearing was scheduled at the same time the sentencing hearing was to be heard, and this supports a finding that the Appellant was also aware of the proceeding. *See Christopher Lynch*, No. E2001-00197-CCA-R3-CD. No objection was made by trial counsel nor was the issue raised in the motion for new trial. The Appellant was aware that the hearing had been scheduled and that his probation revocation hearing would be heard. Additionally, the State was also apparently aware that a revocation hearing was scheduled as the Appellant's probation officer was present with the Appellant's probation history.

The function of notice is to provide forewarning to the person sought to be charged of the existence of the particular facts in questions or to enable him to acquire the means of knowing it. 58 AM. JUR. 2d *Notice* § 2, § 6 (1989). Although not provided written notice, the record indicates that the Appellant was adequately informed of the revocation proceeding. We conclude that the Appellant was not prejudiced, misled, or surprised by the failure to receive written notice. Additionally, we note that the trial court determined that the Appellant had violated his probation because of his arrests and convictions for attempted robbery and theft, and we find that the record adequately establishes these violations. Thus, the Appellant's claim of a procedural due process violation is without merit.

**CONCLUSION**

Based upon the foregoing, we affirm the judgments of the Dyer County Circuit Court.

_____
DAVID G. HAYES, JUDGE

---

[3] Indeed, this statement by trial counsel was raised as a ground for ineffective assistance of counsel by the Appellant.